JOURNAL ENTRY and OPINION
{¶ 1} After his trial to the bench in the Cleveland Municipal Court, defendant-appellant Jason Carroll appeals from his conviction for the misdemeanor offense of criminal damaging.
 {¶ 2} Carroll argues that his conviction lacks support in the weight of the evidence, and that the trial court improperly determined he did not establish his claim of self-defense.
 {¶ 3} Following a review of the record, this court cannot find either of Carroll's arguments has merit. His conviction, consequently, is affirmed.
 {¶ 4} Carroll's conviction results from an incident that occurred on the evening of August 7, 2004. According to the testimony adduced at Carroll's trial, he just had entered the interstate highway known as Cleveland's "Innerbelt" from the Prospect Road ramp and moved into the second lane from the right. His vehicle, a two-door Ford Mustang, immediately became ensnarled in traffic.
 {¶ 5} The Innerbelt was congested due to the fact that just west of the Prospect Road entrance, the two left lanes of the four-lane highway were closed down for construction purposes. Thus, all of the traffic in the two "fast" lanes was compelled to move, ultimately, into the lane which Carroll chose.
 {¶ 6} Edward Shorter also was driving on the Innerbelt at that time, traveling from Painesville to Cleveland's west side. Shorter remained in the farthest left lane until the barrels which blocked it caused him to edge his vehicle into the next one to his right. Since that lane also narrowed, however, Shorter soon began inching his car closer to the second lane.
 {¶ 7} Shorter's wife Rita, in the front passenger seat with her window open, looked to her right as her husband began to turn their car into the lane. In her estimate, he had room to merge, but, just as he started to do so, the car to the rear of them in that lane accelerated. The driver, later identified as Carroll, shouted invectives at the Shorters as his car came forward.
 {¶ 8} Shorter halted, convinced that Carroll was not going to permit him to enter the lane, but as the traffic ahead in that lane eased, Carroll remained stationary. Therefore, both of the Shorters assumed that despite his irate manner, Carroll would allow their car to merge ahead of his. Once again, however, as Shorter began to maneuver to his right, Carroll accelerated and prevented any progress by the Shorters.
 {¶ 9} This time, Carroll stopped his car nearly next to the Shorter car. As he shouted at its occupants, he moved his left arm off his car's windowsill, closed his left hand into a fist, and struck downward at the mirror on the passenger side of the Shorter's vehicle. The area of attachment cracked, leaving the mirror dangling by a cable. Carroll thereupon drove ahead. The vehicle immediately behind Carroll's allowed Shorter to merge.
 {¶ 10} Despite her shock at what had occurred, Rita wrote down the license plate number of Carroll's car. She and her husband watched as Carroll drove onto the ramp for Interstate 90; he seemed to be daring them to follow him. They continued south on Interstate 71, but took the next exit to make a report of the incident at the Second District police station. The officer who took the report traced the license plate number obtained by the Shorters; it was registered to a two-door Ford owned by Carroll.
 {¶ 11} The city subsequently issued a complaint against Carroll that charged him with one count of criminal damaging in violation of Codified Ordinance 623.02(a)(1). The case proceeded to trial before the bench. After hearing the testimony of Edward and Rita Shorter, the officer who took the couple's complaint, and Carroll, and after reviewing the exhibits introduced into evidence, the trial court found Carroll guilty of the charge.
 {¶ 12} The court later ordered the sentence it imposed upon Carroll stayed pending the outcome of this appeal.
 {¶ 13} Carroll presents the following two assignments of error for review:
 {¶ 14} "I. The conviction was against the manifest weight of the evidence.
 {¶ 15} "II. The trial court erred in its finding that in order to establish self defense in nondeadly force, there must be [a] showing of a bona fide belief of death or serious harm to the person asserting the defense."
 {¶ 16} Logically, Carroll's second assignment of error should be addressed first. In it, he argues the trial court viewed the evidence of self-defense under an improper standard.
 {¶ 17} As analyzed by the court in State v. Hansen, Athens App. No. 01CA15, 2002-Ohio-6135 at ¶ 22, the key difference between the acceptable use in an altercation of deadly force as opposed to non-deadly force is that the former "contains a more rigid standard" of proof. To use deadly force, the defendant is required to prove by the preponderance of the evidence that he perceived himself to be in grave danger, and that the circumstances demonstrated he had no duty to retreat. Id. at ¶ 23. This is an objective standard.
 {¶ 18} On the other hand, to prove non-deadly force was warranted, the defendant must show that he reasonably believed that such conduct was necessary to defend himself; this is a subjective standard, and under these circumstances, the defendant has no duty to retreat. Id. at ¶ 24 (Emphasis in original).
 {¶ 19} In Carroll's case, the trial court stated for the record that he had not established his defense because he did not convince the court that "he had a bona fide belief of death or serious harm, * * * yes, he doesn't have to retreat, but especially, the death or serious harm was not believ[able.]" The court thus provided an improper statement of the test.
 {¶ 20} Nevertheless, when placed in context, the trial court's statement demonstrates it properly viewed the evidence Carroll presented. Carroll testified that he began to feel "panic" when he observed the Shorter's car "getting progressively closer," because Shorter had already made "[t]wo or three attempts [narrowly] missing my car with his mirror." He stated that his feeling, coupled with his observation, caused him to reflexively raise his left hand and strike down with it in "an effort to fend off" the front end of the Shorters' car.
 {¶ 21} Clearly, Carroll indicated he was being subjected in the incident to a force, in the form of a passenger vehicle accelerating toward his own car, that carried the potential to cause him death or serious harm. The trial court's comment shows it analyzed the evidence Carroll presented under the proper standard, since in the face of such force, unless Carroll were "Superman," it was unreasonable for him subjectively to believe he could prevent the potential harm merely by putting out his hand and striking the Shorters' car.
 {¶ 22} The trial court thus did not use an improper standard of proof in viewing Carroll's evidence. His second assignment of error, accordingly, is overruled.
 {¶ 23} In his first assignment of error, Carroll argues his conviction lacks support in the weight of the evidence.
 {¶ 24} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the trier-of-fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172 at 175.
 {¶ 25} This court must be mindful, therefore, that the weight of the evidence and the credibility of the witnesses are matters primarily for the factfinder to consider. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 26} In this case, the Shorters gave consistent testimony that demonstrated Carroll drove his car in an aggressive manner when they attempted to move into his lane, confronted them angrily, and acted deliberately when he struck at the side mirror of their car. Carroll himself corroborated their testimony during his own direct examination.
 {¶ 27} He referred to Shorter as one of those drivers who "zoom off to the left even though the signs indicate well in advance" to merge right, and as "the odd person disregarding all traffic laws." He indicated that because of Shorter's driving, "words were exchanged," and that he made a sarcastic comment to the Shorters about their failure to obey signs that advised them to merge earlier. Carroll additionally telegraphed his stubborn refusal to permit Shorter's car to enter his lane, and acknowledged he "touched the mirror" on their car during the incident.
 {¶ 28} On cross-examination, Carroll conceded his feeling of "panic" might broadly be interpreted as being upset, contradicted his earlier testimony by stating his car was "ahead" of the Shorters' vehicle, added to the inconsistency by claiming the Shorters "nearly pushed [him] off the road," and admitted that "what was said" during the incident was a common result of "when people are angry with each other." Carroll's self-defense claim, viz., that he struck at the Shorters' car in a reflexive manner to "fend off" the approaching front end, simply was incredible.
 {¶ 29} Since consistent and credible evidence was presented at trial which proved that Carroll deliberately broke the mirror on the Shorters' car, his conviction is not against the weight of the evidence. State v.Anderson, Montgomery App. No. 20743, 2005-Ohio-3745; State v. Turner,
Ashtabula App. No. 2004-A-0005, 2004-Ohio-5632.
 {¶ 30} Accordingly, Carroll's first assignment of error also is overruled.
 {¶ 31} Carroll's conviction is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J. and McMonagle, J. Concur.